IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHIRLEY ANN BLACKMAN,            :

    Plaintiff,                   :

vs.                              :      CA 15-0202-C

CAROLYN W. COLVIN,               :
Acting Commissioner of Social Security,
                                 :
    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 18 & 19 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the March 30, 2016 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 18 & 19 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

Plaintiff alleges disability due to hypertension, diabetes mellitus, degenerative disc disease of the lumbar spine, history of left ankle fracture with hardware, asthma, anxiety, obesity, and dysthymic disorder. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since July 30, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairment: hypertension; diabetes mellitus; degenerative disc disease of the lumbar spine; history of left ankle fracture with hardware; asthma; anxiety; obesity; and dysthymic disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of light work where light work is defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand and walk no more than 30 minutes at a time and no more than 2 hours in an 8-hour workday. The claimant can occasionally use foot controls. The claimant can never climb ladders/scaffolds/ropes; work around unprotected heights; or work around dangerous equipment. The claimant can never work around temperature extremes, humidity, wetness, or be exposed to concentrated environmental pollutants such as dust, chemicals, and fumes. The claimant is able to carry out simple one or two step instructions and detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations. The claimant must avoid tasks involving a variety of instructions or tasks. The claimant needs to avoid work in crowds and tasks involving a variety of instructions or tasks. She is able to have occasional interaction with the public.

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

.   .   .

The undersigned will now turn to evaluate the medical record of evidence regarding the claimant's alleged physical impairments of hypertension, diabetes mellitus, degenerative disc disease of the lumbar spine, asthma, history of left ankle fracture with hardware, and obesity to assess the claimant's physical residual functional capacity (RFC).

The claimant's medical records reflect that the claimant received conservative treatment for her impairments, many of her clinic visits were for inconsistent reasons, and she had inconsistent complaints. A treatment note from October 5, 2010 indicated that the claimant had a history of sinusitis, asthma, hypertension, and depression, but she did not complain of any cardiovascular, pulmonary, musculoskeletal, or depression issues at that visit. She was diagnosed with sore throat and hemoptysis. A treatment note from October 6, 2010 indicated that an X-ray was performed and the claimant was diagnosed with tracheobronchitis. On January 25, 2011, the claimant presented to the Mobile County Department of Health requesting a diabetes check-up and prescription refills, and complaining of chest congestion. She was diagnosed with tracheobronchitis and prescribed Albuterol, Ultram, and Ampicillin. On January 28, 2011, the claimant was diagnosed with tracheobronchitis and obesity.

In the summer of 2011, the claimant's primary issue was with her asthma with noted obesity, diabetes, and hypertension. On May 3, 2011, the claimant presented to a clinic for chest congestion and a cough, and the notes indicate that the claimant admitted to being a current occasional smoker. Her blood pressure was 151/92, which is a high blood pressure. She was diagnosed with tracheobronchitis and hypersecretory gastropathy. On May 5, 2011, the claimant presented to the clinic because she was unable to afford her albuterol inhalers, but was given samples and referred to patient assistance. On May 31, 2011, the claimant went to the emergency department for asthma exacerbation and hypertension. At that visit, a radiological report demonstrated that the claimant had no acute chest pathology, and only mild bilateral hyperinflation. On June 6, 2011, the claimant presented for a follow up to obtain prescription refills, and indicated that she did not have [] money to buy her medications. At that visit the claimant did not have any cardiovascular, pulmonary, musculoskeletal, or psychological complaints, and the notes indicate that

3

the claimant was not morbidly obese and her blood pressure was 139/75, which is a normal blood pressure. The claimant was diagnosed with asthma and obesity, and the hospital attempted to help her afford her medication. On August 10, 2011, the claimant presented to the Mobile County Health Department for complaints of chest pain and muscle spasms in her left lower back, yet her musculoskeletal and cardiovascular systems appeared normal. She was diagnosed with asthma, obesity, and a backache. As of the next day, she reported that she felt better. On September 22, 2011, the claimant presented to the USA Medical Center for shortness of breath, coughing, and wheezing. At the time of discharge, which was the date she presented to the hospital, the discharge notes stated that the claimant's attack appeared to be anxiety related.

In the fall of 2011 through the spring of 2012, the claimant presented for follow-up appointments or for issues not related to her severe impairments. On September 26 and October 27, 2011, she presented to the Mobile County Health Department for cysts and/or boils under her arm, and the treatment notes stated that she did not complain of any back pain, joint pain, chest pain or discomfort, or shortness of breath. On September 27, 2011, she presented to Mobile County Health Department for a diabetes follow-up appointment. On November 18, 2011; December 16, 2011; March 30, 2012; July 24, 2012; and May 21, 2012, she presented for allergies, but each time no know allergies were noted or found. On April 20, 2012, the claimant presented for a spider bite to the Mobile County Health Department, and the treatment notes stated that the claimant did not complain of any cardiovascular, pulmonary, musculoskeletal, or psychological issues.

As of July 2012, the claimant started complaining of ankle pain, and made some complaints of back pain, but did not complain of symptoms related to her asthma, such as shortness of breath. On July 19, 2012 the claimant presented for lower back pain and left ankle pain. The notes showed that the claimant had a history of depression, lower back pain, left ankle pain status post a rod placement, diabetes mellitus, hypertension, and asthma. At that visit, the claimant did not complain of any shortness of breath, symptoms of depression, or cardiovascular issues. The claimant was assessed with elevated blood pressure, obesity, asthma, dysthymic disorder, backache, and arthropathy. A radiological report on July 20, 2012, demonstrated that there was no abnormality of hardware with no acute process or tissue deformity in her left ankle. In addition, the report demonstrated that there was no evidence of spondylolisthesis in her lumber spine, and that her SI joints and soft tissues were unremarkable. On August 9, 2012, the claimant went to the emergency room for ankle pain because of a ground level fall, and was diagnosed with a left ankle contusion and asthma exacerbation. Radiographs were taken of her left ankle, and it (sic) showed that there was no evidence of acute fracture or dislocation; no lucency around the hardware to suggest loosening or infection; and the ankle anatomic alignment was preserved, which demonstrated that there was no evidence of a fracture or hardware

complication. She was given pain medication and discharged from the hospital. Treatment notes from August 14, 2012 indicate that when the claimant went to the emergency room, she was told that she did not need surgery on her ankle, but instead was given [] pain medication and told to keep her leg elevated. On October 5, 2012, the claimant complained of left ankle pain and was diagnosed with anthropathy and malunion of the ankle.

On October [5], 2012, Mark Pita, M.D. assessed the claimant's physical RFC. Dr. Pita found that the claimant can lift 5 pounds occasionally and 1 pound frequently; sit for 4 hours; and stand and walk for 0 hours. He found that the claimant does not require an assistive device to ambulate. He found that the claimant can frequently perform gross manipulation; fine manipulation; bending and/or stooping movements; reaching; and be exposed to environmental problems. He found that the claimant can rarely push/pull; operate motor vehicles; or work with or around hazardous machinery. He assessed that the claimant can never climb stairs and ladders or balance. He explained that he came to his opinion because the claimant's chronic fracture of her left ankle limits her range of motion. In addition, he opined that the claimant's pain is present to such an extent as to be distracting to adequate performance of daily activities or work; physical activity greatly increases pain to such a degree as to cause distraction from tasks; and that drug side effects can be expected to be severe so as to limit effectiveness.

On December 9, 2012, the claimant presented to the Stanton Road Clinic for her left ankle. The treatment notes indicated that the claimant was asymptomatic for any ankle issues status post her surgery in approximately 2008 until August 2012 when she fell. Over the counter medication was prescribed for her pain and she was placed into a short-leg walking cast. The doctor indicated that potential removal of the hardware would be considered on an outpatient basis if the claimant continued to be immobile and in pain. However, he noted there was no evidence of breakage.

.   .   .

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not wholly credible. First, the claimant testified at the hearing that her ankle is still a problem and affects her ability to walk; however, the claimant's medical records, specifically the radiograph reports, demonstrate that the claimant's recent ankle issue does not show an ongoing hardware issue, but rather an ankle sprain that required a cast. Second, the claimant's testimony that her cane is necessary to her walking is not wholly credible since no doctor prescribed her a cane and her treatment notes did not indicate any abnormal gait, which indicates that

5

the cane is not a necessity. Third, the claimant's ability to engage in a wide array of activities of daily living, such as attending Bible study, choir practice, and two church services on Sunday, belies her claims that she is completely disabled. The Eleventh Circuit recognizes that an ALJ may consider a claimant's daily activities as a factor in making credibility determinations. *See Harwell v. Heckler,* 735 F.2d 1292, 1293 (11th Cir. 1984). Fourth, the claimant's complaints of asthma, pain arising from her musculoskeletal impairments, anxiety, diabetes issues and hypertension issues are not consistent complaints evident from a longitudinal review of her medical records.

In light of the record as a whole, the undersigned assigns the following residual functional capacity (RFC). The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently in light of her degenerative disc disease of the lumbar spine that is mild with no spondylolisthesis evident from a radiograph report. The claimant can stand and walk no more than 30 minutes at a time and no more than 2 hours in an 8-hour workday in light of her history of left ankle fracture with hardware given that the radiograph report showed no abnormality of hardware with no acute process or soft tissue deformity in her left ankle. The claimant can occasionally use foot controls in light of her history of left ankle fracture with hardware given that the radiograph reports demonstrate that her hardware is not causing problems. The claimant can never climb ladders/scaffolds/ropes or work around unprotected heights or dangerous equipment in light of her obesity, diabetes mellitus, and hypertension. The claimant can never work around temperature extremes, humidity, wetness, or be exposed to concentrated environmental pollutants such as dust, chemicals, and fumes in light of her asthma and any exacerbation of her asthma causing her shortness of breath from temperature extremes or pollutants. The claimant must avoid tasks involving a variety of instructions or tasks, but is able to carry out simple one or two-step instructions and detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations in light [of] her anxiety that is controllable with medication. She is able to have occasional interaction with the public since her anxiety is controllable with medication. The claimant must avoid tasks involving a variety of instructions or tasks in light of her anxiety and potential for crying spells. The claimant needs to avoid working in crowds and tasks involving a variety of instructions or tasks given her dysthymic disorder.

The undersigned will now turn to weigh the opinion evidence. Dr. Pita's opinion is given no weight. There is no indication as to whether Dr. Pita examined the claimant, looked at her complete medical history, or merely listened to the claimant's allegations. Furthermore, the objective radiographic evidence and the treatment notes from Stanton Road Clinic are in complete contrast to the opinion of Dr. Pita.

. . .

**6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

.   .   .

**7.     The claimant was born on September 20, 1964 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).**

**10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

.   .   .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: assembler (DOT 739.687-066) with 1,500 jobs in Alabama and 102,000 jobs in the national economy; microfilm document preparer (DOT 249.587-018) with 1,200 jobs in Alabama and 149,000 jobs in the national economy; and surveillance system monitor (DOT 379.367-010) with 868 jobs in Alabama and 102,000 jobs in the national economy.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant

7

numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.     The claimant has not been under a disability, as defined in the Social Security Act, from July 30, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 28, 29, 32, 33-35, 36-37, 37 & 38 (internal citations omitted; emphasis in original).) The Appeals Council affirmed the ALJ's decision (Tr. 7-9) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to her past relevant

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

8

work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those sedentary jobs identified by the vocational expert during the administrative hearing, is supported by substantial evidence.[3] Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence

---

[3] Even though the ALJ determined that plaintiff retains the physical residual functional capacity to perform less than the full range of light work (Tr. 32), the jobs identified by the vocational expert in response to the ALJ's hypothetical fall within the sedentary range (*see* Tr. 78-79).

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, the sole issue raised by Blackman in her brief is that the ALJ erred in failing to accord adequate weight to the opinions of the treating physician, Dr. Mark Pita.[5] On October 5, 2012, Pita completed both a physical capacities evaluation ("PCE") and a clinical assessment of pain ("CAP") form. (*See* Tr. 347-348.) On the PCE, Pita indicated plaintiff can only sit for 4 hours in an 8-hour workday, stand or walk for zero hours in an 8-hour workday, lift and carry 5 pounds occasionally and 1 pound frequently, rarely perform pushing and pulling movements (arm and/or leg controls), rarely operate motor vehicles, rarely work with or around dangerous machinery, never climb or balance, and would be absent from work more than four days per month, all because of "chronic fracture of [the] left ankle, limiting range of motion[.]" (Tr. 347.) Interestingly, on this same form, Pita indicated plaintiff would not require an assistive device to ambulate and that she can frequently perform gross and fine manipulation, frequently reach, frequently perform bending and/or stooping movements, and frequently be exposed to environmental "problems" like dust and allergens. (*See id.*) On

---

[5] During oral argument, counsel for plaintiff suggested that the ALJ erred in giving great weight to the opinion of Dr. Duke, in light of the fact that the record contains no curriculum vitae on Duke to verify her credentials. Plaintiff also argues that it is not clear what records Duke reviewed.

The Court cannot agree with plaintiff on either prong of her attack on Duke. Initially, the undersigned notes that the record does not appear to contain any curricula vitae, including one for Dr. Pita. Nevertheless, this "lack" of evidence amounts to no more than harmless error given that an Internet search satisfies the Court that Dr. Linda Duke is a practicing clinical neuropsychologist. http://www.doctor.com/Linda_Duke (last visited April 22, 2016, at 10:48 a.m.). In addition, it is clear to this Court what records Duke reviewed as she lists the evidence upon which she based her opinions. (*See* Tr. 292 (referencing the MSE by Dr. Jennifer Adams on August 2, 2011, records dated May 3, 2011-June 6, 2011 from the Mobile County Department of Health, and evidence of plaintiff's ADLS).)

10

the CAP, Pita indicated that pain is present to such an extent as to be distracting to adequate performance of daily activities or work; physical activity—such as walking, standing, sitting, bending, stooping, etc.—would greatly increase plaintiff's pain so as to cause distraction from or total abandonment of task; and drug side effects could be expected to be severe and to limit effectiveness due to distraction, inattention or drowsiness. (Tr. 348.)

The law in this Circuit is clear that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" *Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished), quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (other citations omitted). In other words, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004) (other citation omitted); *see Nyberg, supra,* 179 Fed.Appx. at 591 (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam). Most relevant to this case, an ALJ's articulation of reasons for rejecting a treating source's RFC assessment must be supported by substantial evidence. *See id.* ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating

11

physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Social Sec. Admin.,* 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same).

In this case, the ALJ specifically determined that "no" weight was to be accorded Pita's opinions set forth on the PCE and the CAP. (*Compare* Tr. 37 *with* Tr. 34.)

> Dr. Pita's opinion is given no weight. There is no indication as to whether Dr. Pita examined the claimant, looked at her complete medical history, or merely listened to the claimant's allegations. Furthermore, the objective radiographic evidence and the treatment notes from Stanton Road Clinic are in complete contrast to the opinion of Dr. Pita.

(Tr. 37.) The undersigned construes the ALJ's comments as an implicit (if not explicit) finding that Dr. Pita's opinions were conclusory and inconsistent with the other evidence of record. (*See id.*)

A review of the transcript reflects that Dr. Pita did treat plaintiff on two occasions during the relevant time period, that is, after July 30, 2010 (*see* Tr. 28 (onset date of July 30, 2010)).[6] On July 19, 2012, Pita noted that Blackman walked with a left leg limp and had pain with flexion of the left ankle; the pain was characterized by plaintiff as throbbing and intermittent (Tr. 350) and yet Pita also noted that plaintiff was in no

---

[6] While there is reference in the record to Dr. Pita being the examiner on three other dates, that is July 20, 2012, July 24, 2012, and August 14, 2012 (Tr. 358), it is apparent that on none of these occasions did Pita actually examine Blackman; instead, on July 20, 2012, Pita simply reviewed the x-rays of plaintiff's left ankle and back, on July 24, 2012, medications were prescribed or samples given to plaintiff, and on August 14, 2012, it appears that an LPN in Pita's office spoke with plaintiff about her ER visit on August 9, 2012 (*compare id. with* Tr. 366) and specifically noted that Blackman was "TOLD SHE DO NOT NEED SURGERY ON ANKLE." (Tr. 358.)

acute distress (Tr. 351).  On October 5, 2012, the same date the PCE and CAP forms were completed, Pita again noted that Blackman walked with a left leg limp and had pain on flexion of the left leg ankle (Tr. 354); however, when describing her pain on this occasion, plaintiff characterized it as throbbing and persistent (Tr. 353). Again, plaintiff was noted to be in no acute distress (Tr. 354) and notation was made that the chief reason plaintiff was seeing Pita was so he could "[c]omplete disability form[s]" (Tr. 353.) Moreover, the following observations and comments were made by Pita: "Patient is a AAF with chronic left ankle pain. Patient says that she needs another operation to re-pin her left ankle. Patient says that the pain and difficulty ambulating have not improved." (*Id.*)[7]

Based on the foregoing, the Court finds that the ALJ was absolutely correct in giving no weight to Dr. Pita's October 5, 2012 RFC and CAP findings because these findings were inconsistent with the radiographic evidence, as well as the treatment notes from Stanton Road Clinic, *see Gilabert, supra,* 396 Fed.Appx. at 655 (good cause exists for not affording a treating physician's opinion substantial or considerable weight where the evidence supports a contrary finding or where the opinions are not bolstered

---

[7] Pita's assessments on this occasion included "[m]alunion of fracture of the ankle" (Tr. 355) and since there is no objective evidence of record which reflects any malunion of the fracture of the left ankle (*compare* Tr. 364 ("LEFT ANKLE, THREE VIEWS: No comparison studies. There is a compression plate and screws in the lateral malleolus and distal fibula with evidence of fracture healing. Wires and pins are noted in the medial malleolus, also demonstrating healing of a fracture. Ankle mortise is intact. No abnormality of hardware with no acute process or soft tissue abnormality.") *with* Tr. 372 ("Three radiographs of the left ankle[.] . . . There is a fixation plate with interlocking screws in the distal fibula/lateral malleolus and pins traversing the medial malleolus into the tibial metaphysis. There is no evidence of acute fracture or dislocation. There is no lucency around the hardware to suggest loosening or infection. The ankle anatomic alignment is preserved. The tibiotalar joint is intact. Boehler's angle is preserved. The talar dome is intact. No lytic or blastic lesion is seen. Soft tissue swelling noted medially and laterally.")) it is apparent to the undersigned that this assessment was based upon Blackman's comment that she needed "another operation to re-pin her left ankle." (*Compare* Tr. 355 *with* Tr. 353; *see* Tr. 358 ("SPOKE WITH PT ABOUT ER VISIT. TOLD SHE DO NOT NEED SURGERY ON ANKLE.").)

by the evidence), as explained more fully *infra*, and the ALJ correctly surmised that Pita was "merely listen[ing] to the claimant's allegations[]" in completing the forms[8]. In addition, Dr. Pita's objective clinical findings of pain on flexion of the left ankle and a left leg limp—while at the same time also prominently noting that plaintiff was in no acute distress—are inherently inconsistent with the findings set forth on both the PCE form and the CAP form he completed on October 5, 2012. *See Gilabert, supra*, 396 Fed.Appx. at 655 (good cause exists for not affording a treating physician's opinion substantial or considerable weight where those opinions are inconsistent with the physician's own medical records). In particular, nothing about these "findings/limitations" support an inability to lift and/or carry more than 5 pounds, as indicated on the PCE form completed by Pita, particularly in light of Blackman's unequivocal indication that she can lift 10 to 20 pounds (Tr. 219). Moreover, the medical basis identified by Pita—chronic fracture of left ankle, limiting range of motion—and Pita's clinical findings do not support the noted restrictions of an ability to only sit for four hours out of an eight-hour workday and stand or walk zero (0) hours out of an eight-hour workday (*see* Tr. 347), inasmuch as there is absolutely no evidence in the record which establishes that Blackman has a "chronic fracture" of her left ankle (*compare* Tr. 364 *with* Tr. 372). Also, the other medical evidence of record does not support the total inability to lift and carry more than 5 pounds, or the significant sitting and standing/walking limitations noted by Pita on the PCE. (*See, e.g.,* Tr. 364 (July 20, 2012 x-rays of the left ankle showed no abnormality of the hardware in the ankle and no

---

[8] That Pita was "listening to" Blackman's complaints when completing the PCE and CAP is clear based not only on Pita's comment that plaintiff's visit was specifically for completion of the "disability form[s]" but, as well, on his prominent acceptance of Blackman's statements that she needed "another operation to re-pin her left ankle[]" and that her "pain and difficulty ambulating ha[d] not improved." (Tr. 353; *compare id. with* Tr. 347 & 348.)

acute process or soft tissue abnormality); Tr. 366-367 (on August 9, 2012, plaintiff arrived at the emergency room of the University of South Alabama Medical Center complaining of left ankle pain after a fall; however, examination of the left ankle revealed only mild lateral edema and a final diagnosis of left ankle contusion); Tr. 372 (x-rays taken of plaintiff's left ankle on her emergency room visit on August 9, 2012 were read on August 10, 2012, and revealed no evidence of acute fracture or dislocation, preserved ankle anatomic alignment, and nothing suggesting any loose hardware; Dr. Moroni's impression was "[s]tatus post left bimalleolar ORIF without evidence of fracture or hardware complication."); and Tr. 374 (on presentment to the Stanton Road Clinic on December 3, 2012, physical examination revealed 5/5 strength, tenderness to palpation along the lateral incision in and around the area of the plate but no pain on "the medial aspect of where the tension band is in place[;]" plaintiff was placed in a walking cast for three weeks "to allow for a calming down of the soft tissue, as it appears that it could be a sprain[]" and it was noted that if the pain continued hardware removal on an outpatient basis would be considered).)  Finally, nothing about the just-referenced medical evidence of record—including Dr. Pita's own clinic notes—support the CAP findings; instead, the undersigned agrees with the ALJ's suggestion that these findings were "driven" by plaintiff's subjective complaints,[9] and, therefore, these "findings/opinions" were properly rejected. *Cf. Crawford, supra,* 363 F.3d at 1159 (upholding ALJ's rejection of treating physician's opinion, in part, because it "appear[ed] to be based primarily on [claimant]'s subjective complaints of pain").

---

[9] The Court would be remiss in failing to note that plaintiff does not contest the ALJ's credibility finding.

Accordingly, the Court finds the ALJ's articulated reasons for giving no weight to the October 5, 2012 PCE and CAP findings supported by substantial evidence.

In light of the foregoing, and because plaintiff raises no other issues, the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Sec.,* 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given h[er] RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Sec.,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 26th day of April, 2016.

                     s/WILLIAM E. CASSADY
                     **UNITED STATES MAGISTRATE JUDGE**